**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTES**

JOSEPH PONZO,                                   )
on behalf of himself                            )        Civil Action No.: 1:14-cv-14080
and all others similarly situated,              )
                                                )        <u>CLASS ACTION</u>
                    Plaintiff,                  )
                                                )
        vs.                                     )
                                                )
WATTS WATER TECHNOLOGIES,                       )
INC.,                                           )
                                                )
                    Defendant.                  )
_____)                 JURY TRIAL DEMANDED

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff Joseph Ponzo, on behalf of himself and all persons similarly situated, by and through his attorneys, alleges as follows:

<u>**INTRODUCTION**</u>

1.      This is a class action brought on behalf of Plaintiff Joseph Ponzo ("Plaintiff") and all other similarly situated individuals and entities who own or have owned flexible braided stainless steel water heater supply lines ("Class Products or "Supply Lines") manufactured by Watts Water Technologies, Inc. ("Watts" or "Defendant"), or have owned homes, or other structures physically located in the United States, in which Class Products are or were installed (the "Class").

2.      Supply lines are an integral part of every conventional storage water heater.  A supply line routes cold water into the tank where it is heated, and a second supply line draws heated water from the top of the tank in order to supply hot water to the structure serviced by the water heater.  Without supply lines, water heaters cannot function.

3.       Watts develops, designs, manufactures, advertises, distributes, sells and warrants a variety flexible braided water heater supply lines ("Class Products").  Watts markets Class Products as suitable, less expensive alternatives to traditional copper supply lines, and suitable for use "in residential & commercial applications, specifically for water heater hookups."

4.       Contrary to Defendant's representations, however, Class Products are defectively designed and/or manufactured, and unsuitable for their intended purpose.  As set forth in greater detail below, Class Products incorporate an inner tubing made from Santoprene, a thermoplastic elastomer made from EPDM rubber, a synthetic rubber, and polypropylene, a thermoplastic polymer used in a wide variety of applications.  Due to its chemical composition, the Santoprene tubing degrades as it is exposed to metallic ions present in most water supplies.

5.       As the tubing degrades during ordinary use, Supply Lines fail and begin to leak. Customers fortunate enough to quickly discover a leak are forced to incur the expense of purchasing and installing a new supply line.  If the leak is not promptly discovered, however, the tubing will continue to degrade until the supply line fails completely, causing flooding and very costly property damage.

6.       Customer complaints reveal that Watts has long been aware of the inherently defective nature of Class Products. Upon information and belief, many people that have experienced water heater leakage traceable to a failed Class Product have asked Watts to remedy the failure and resultant damage, but Watts has declined.

7.       Further, the vast number of insurance claims relating to Class Products did alert, or should have alerted, Watts to the defects in the Class Products. Supply line failures are one of the most common and costly forms of water heater-related insurance claims.  According to the Insurance Institute for Business and Home Safety, supply line failures account for 10% of all

water heater claims, and are 60% more costly than claims caused by leaking or bursting heaters, generally.

8.       Despite this longstanding knowledge, Watts has refused to disclose to Plaintiff and the public the inherently defective nature of Class Products.  Indeed, Watts has continued to profit from the distribution and sale of Class Products while its customers suffer.

9.       As a result of Watts' unfair, deceptive and/or fraudulent business practices, purchasers of Class Products, including Plaintiff and Class members, have suffered an ascertainable loss of money and/or property.  Had Plaintiff and Class members known that Class Products are guaranteed to fail, they would not have purchased them.

10.      Watts has violated its contractual, common law and statutory obligations to Plaintiff and the Class.  Accordingly, Plaintiff brings this action to redress Watts' violations of the New Jersey Consumer Protection Act, and also seeks recovery for Watts' breach of express warranty, breach of implied warranties, breach of the duty of good faith and fair dealing, and common law fraud.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).  This court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.      This Court has personal jurisdiction over Defendant, as its corporate headquarters and principal place of business is located in this District.

13.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the acts giving rise to Plaintiff's claims occurred in this District, Defendant conducts substantial business in this District, and Defendant's headquarters and principal place of business are located in this District. Defendant has sufficient minimum contacts with the State of Massachusetts and intentionally avails itself of the consumers and markets within the State through the promotion, marketing and sale of its products.

## PARTIES

*Defendant*

14.     Defendant Watts Water Technologies, Inc., ("Watts" or "Defendant") is a Delaware corporation with its headquarters and principal place of business in North Andover, Massachusetts. Defendant develops, designs, manufactures, markets, sells and warrants its products through various authorized sales representatives, as well as traditional brick-and-mortar retail stores, including national retailers such as Home Depot, Lowes and others.

*Plaintiff*

15.     Plaintiff Joseph Ponzo ("Plaintiff") is a resident of Tom's River, New Jersey.  On or around October 31, 2012, Plaintiff purchased a Watts-brand Supply Line at a local Lowe's store for use with a conventional gas-powered storage water heater purchased that same day.  A professional successfully connected the Supply Line, which was used to carry hot water out of the heater and into the structure's fixed plumbing system.

16.     The Supply Line only functioned as intended for about three months.  In early 2013, Plaintiff noticed water seeping from beneath the door leading to the room in which his water heater is located.  Plaintiff opened the door to find that water was leaking from the Supply Line, both onto the floor and onto a nearby wall made from drywall.

17.     Plaintiff brought in a professional who confirmed that the leak was caused by the failure of the hot water Supply Line and replaced the failed Supply Line with a copper connector. Plaintiff had to pay out of pocket for the replacement line and to have it installed, as well as to replace the drywall damaged by the leak.

## FACTUAL BACKGROUND

*Water Heater Supply Lines*

18.     A storage water heater is an appliance that uses a hot water storage tank to maximize heating capacity and provide instantaneous delivery of hot water to a structure. Conventional storage water heaters use a variety of fuels, including natural gas, propane, fuel oil, and electricity. Conventional storage water heaters are the most common water heating devices used in the United States.

19.     Most conventional water heaters employ the same design.  Cold water supply lines (represented as "A" in **Figure 1**, below) connected to the top of the water heater supply cold water to the bottom of the tank where it is heated.  The heating mechanism, either a burner or an element, stays on until the water reaches temperature. As the water heats, it rises to the top of the tank. Another supply line (designated "B"), which extends only to the top of the inner part of the tank, then carries hot water out to the structure's fixed plumbing system.



**FIGURE 1 (Diagram of Storage Water Heater)**

20.     Water heater supply connectors traditionally were made from copper.  Copper is malleable, easy to solder and relatively corrosion-resistant, making it well suited to transport potable water throughout a structure.  Copper water heater supply lines usually consist of little more than a copper pipe and a dielectric union.  **Figure 2** below shows a water heater using typical copper pipes as water heater supply connectors.



**Figure 2**

***Braided Stainless Steel Supply Lines Fail Prematurely***

21.     As copper prices skyrocketed in the early 2000s and stripped margins, supply line manufacturers investigated new, low-cost alternatives to copper supply lines.   The industry eventually settled on the most common, low-cost supply line design in use today: (1) an inner hose manufactured from ethylene propylene diene monomer (EPDM) rubber, or Santoprene, an EPDM-based synthetic material; and (2) an exterior sheath composed of braided stainless steel. **Figure 3** is representative of a typical braided stainless steel water supply connector.



**Figure 3**

22.     The remaining elements of braided stainless steel supply lines are similar to those used in copper lines.   Like copper lines, stainless steel lines incorporate a brass female adapter, or coupling nut, on each end. The nut assembly also includes sealing washers intended to prevent leaking, a brass stem and a crimp that secures the nut assembly to the actual hose.   Most supply lines range in length from 12" to 24", and utilize female iron pipe (FIP) adapters ranging in size from ½" to 1".



**Figure 4**

23.     Due to the aforementioned increases in the price of copper, braided stainless steel lines are less expensive than traditional copper lines.  For instance, a twenty-four inch Watts-brand braided stainless steel supply line retails for approximately $12.78 at Home Depot.[1] Conversely, a copper supply line manufactured by a competitor retails for $15.72.[2] Unbeknownst to consumers, these minimal savings may result in substantial damages shortly after purchase.

24.     Although they are lightweight, flexible and relatively easy to install for do-it-yourselfers, braided stainless steel water heater supply lines, like Class Products, suffer from significant design and/or manufacturing defects that render them unsuitable for their ordinary and intended purpose.  Over time, Class Products are virtually guaranteed to rupture, leak and fail.

---

[1] http://www.homedepot.com/p/Watts-3-4-in-x-3-4-in-x-24-in-FPT-x-FPT-Braided-Stainless-Steel-Water-Heater-Connector-LF-BK-LBF-24/202267230
[2] http://www.homedepot.com/p/Eastman-3-4-in-FIP-x-3-4-in-FIP-Copper-Water-Heater-Connector-0437724/205192763

25.     Specifically, the Santoprene inner hose used in Class Products will degrade over time.  Potable water typically contains trace amounts of chlorine.  As the water is heated, the water reacts with the brass stem and releases metallic ions into the heated water as it passes through the supply line.  These ions interact with the Santoprene tube, which begins to degrade as a result.

26.     Class Products exhibit failure modes consistent with tube degradation caused by ionized water.  Class Products tend to tear or rupture near the connection point at which hot water flows out of the heater – the point at which the hottest water interacts with the brass stem.

27.     As a result of poor manufacturing and/or design, stainless steel braided supply lines have become one of the most common and costly forms of water heater-related insurance claims.  According to the Insurance Institute for Business and Home Safety, supply line failures account for 10% of all water heater claims, and are 60% more costly than claims caused by leaking or bursting water heaters, generally.

***Defendant Knows Class Products are Likely to Fail***

28.     Since 2010, Watts has sold Class Products in a variety of lengths and widths. Watts has sold CWH-S, its standard offering, in lengths ranging from 12" to 24", and FIP sizes of 3/4" or 7/8"; LFCWH-S, lead-free versions of CWH-S, in lengths ranging from 12" to 60", and FIP sizes from 5/8" to 1"; and CWH-S-QC, which utilize Watts' "quick connect" fittings and are available in lengths of 12" to 24" and FIP of 3/4".

29.     Regardless of lead content or available length, Watts' flexible stainless steel water heater supply lines are susceptible to premature failure.  Although Watts warrants its products "to be free from defects in material and workmanship under normal usage for a period of one year," properly constructed supply lines should last for at least several years.  However, due to

manufacturing and/or design defects common to all models, Class Products fail well before the end of their expected useful life.  For instance, competing products made entirely from corrugated stainless steel are sold with a lifetime warranty that covers "defects for the lifetime of the installation. Defects are tube failures, pinholes, cracks, or bursting." [3]

30.    A number of internet blogs and other websites publish consumer complaints describing the exact same defects as those described herein and suffered by Plaintiff.  For example, the following are a number of product reviews taken from HomeDepot.com:

Absolute junk. Failed after 4 years. September 23, 2014 [4]

This Watts hose was connected between 2 water heaters 4 years ago and last night the hose failed where the braiding meets the hex nut. Water hissing out onto the floor below and dripped through the wall downstairs.

Looks are deceiving, August 7, 2014 [5]

I'm struggling with one of these right now because it won't form a decent seal with my other hardware. Made in China. I've bought 3 of these and nothing seals, with or without plumber's tape.

Also my plumber says the plastic tube inside the flex disintegrates when exposed to hot water. FYI.

leaked, April 16, 2012 [6]

Both compression fittings leaked. The compression rings did did not grip the pipes despite my herculean efforts to crimp. I returned this kit for a refund and bought another brand of compression fittings and another pair of water heater lines. The replacement fittings worked perfectly.

---

[3] http://www.homedepot.com/p/Falcon-Stainless-1-in-x-18-in-Corrugated-Stainless-Steel-Flexible-Water-Connector-SWC-1x18/100182353
[4] http://www.homedepot.com/p/Watts-3-4-in-x-3-4-in-x-18-in-FPT-x-FPT-Braided-Stainless-Steel-Water-Heater-Connector-LF-BK-LBF-18/202267229#customer_reviews
[5] *Id.*
[6] http://www.homedepot.com/p/Watts-Lead-Free-Braided-Stainless-Steel-Electric-Water-Heater-Installation-Kit-LF-ECK18/202255002#customer_reviews

Keep an eye for small leaks, or pay the price! February 13, 2013 [7]

I put a set of 24" connectors on my gas water heater. No problems per say but I noticed a small seeping leak at the compression sleeve after about a year. I let it go for a couple of days and...bammm!!! the hose sprung a huge spraying leak. Luckily I caught it with minimal damage to my utility room. I will say that if you are going to use these connectors, install them hand tight and then give them a 1/4 turn to seal. I've seen people torque the nut so hard that they cut the gasket and spring a leak within a couple of weeks. Bottom line is, keep an eye on them..

second one failed in less than a year, July 7, 2014 [8]

worked great for a while then failed. I was lucky my son was up at one in the morning playing Xbox when the first one went or the living room below would have been flooded. I went back with Shark Bite brand.

31.     Product reviews on Aamazon.com reveal similar shortcomings:

50% failure rate, November 4, 2013 [9]

Several years ago I installed a solar water heater. I used six of the Watts connectors between the water tanks and the heat exchanger. About one year later, one of the connectors failed - it began to leak severely at one end. Thinking that this must be a fluke, I replaced it with another one since these were billed as "high quality". Six months after that, the second on failed in the same manner. I stupidly (in hindsight) replaced that one, now suspicious but willing to forge ahead. This week the third one failed and I am now ripping all of these pieces of garbage out of the system and replacing them with the standard corrugated copper connectors that have proven more reliable over decades. I now have sheet rock damage and all of the wasted effort of multiple replacements (I insulated the pipes so it was more than simple effort to replace them.) My experience also covers the 18" and the 24" versions.

Do yourself a favor and avoid these like the plague.

Looks Nice but Leaks After a Year and a Half., October 14, 2012 [10]

---

[7] http://www.homedepot.com/p/Watts-3-4-in-x-3-4-in-x-24-in-FPT-x-FPT-Braided-Stainless-Steel-Water-Heater-Connector-LF-BK-LBF-24/202267230#customer_reviews
[8] http://www.homedepot.com/p/Watts-3-4-in-x-3-4-in-x-15-in-Braided-Stainless-Steel-FPT-x-MPT-Water-Heater-Connector-with-PVC-Core-LF-BK-LBF-15/202267228#customer_reviews
[9] http://www.amazon.com/Watts-Heater-Braided-Stainless-Nitrile/dp/B004NDM8KK#customerReviews
[10] http://www.amazon.com/gp/product/B0035KF9BC/ref=s9_simh_se_p60_d0_i5?pf_rd_m=ATVPDKIKX0DER&pf_rd_s=search-desktop-advertising-no-results-center-

Installed these because they look like a quality product. Apparently it's all on the outside, because what is inside will leak after a year or two. Hose must have degraded on the inside. The one that failed was on output(hot) side of the water heater. Not going to give the input side a chance to fail.. Fortunately, I was home when it failed and caught it after a big puddle showed up on the floor. The pinhole leak was working it's way through the sheet-rock next to the water heater. I think I got these at home depot. Made in China - should know better.

Watts Water Heater Hoses = Water Restoration Project (entire home or business)!, August 4, 2013

I used to use braided steel water lines on all my rental properties and my home until...
I had a 4 year old Watts Heater Hose blow and flood three (3) business suites in a commercial building just last Friday! $1000 later... I had to have Roto Rooter out to replace both hoses, Stanley Steamers to vacuum out 650 sq feet of commercial carpeting! And that's not the end of it! I may have to have dry wall and wood flooring pulled out of all three spaces! DO NOT USE THIS PRODUCT UNLESS YOU DON'T MIND WATER DAMAGE AND POTENTIAL MOLD! I have had 3 estimates done by water restoration crews and all three only gave a starting point of $2200! $3800! And my least favorite $11,000! And this does not include drywall and flooring! Needless to say I'm filing a claim against the manufacturer.

32.     Some disaffected customers have even devoted entire websites to their disastrous experiences with Watts.  For instance,

http://www.lemurzone.com/rfg/index.php/2010/05/29/water-heater-hose-failure-watt-stainless-steel-hose/comment-page-1/ contains dozens of complaints from individuals who purchased Class Products only to see them fail shortly thereafter.  Some failed in as few as two months.

33.     Watts also knows Class Products are predisposed to premature failure because of the volume of insurance claims filed as a result of the defects complained of herein.  As discussed above, supply line failures account for 10% of all water heater claims, and are 60% more costly than claims caused by leaking or bursting, generally.  Insurance carriers are well-

1&pf_rd_r=00DKEFFR2QXSTD1V91FZ&pf_rd_t=301&pf_rd_p=1912906142&pf_rd_i=watss%20water%20heater%20braided#customerReviews

positioned to diagnose Class Products as the cause of many water heater failures, and likely have sought indemnification from Watts in connection with the same.

34.     Further, Watts is an experienced and sophisticated manufacturer of Class Products and other water safety and flow control products.  Watts presumably tested and evaluated Class Products prior to placing them into the stream of commerce.  Due to the inherently defective nature of Class Products, and the volume of known consumer complaints, Watts must know that they are predisposed to fail well before the end of their expected useful life.

35.     As alluded to in several of the consumer complaints referenced above, it appears that Watts also refuses to reimburse persons whose Class Products have failed, even when the failure has resulted in significant property damage.

36.      Defendant's fraudulent, deceptive and unfair practices have, and continue to cause Plaintiff, as well as members of the Class, out-of-pocket loss in the amount of the price paid for these worthless products, and damages suffered in addressing resulting property damage.

## **TOLLING OF THE STATUTE OF LIMTATIONS**

37.    Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiff and members of the Class could not have reasonably discovered the true, latent defective nature of the Class Products until shortly before this class action litigation was commenced.

38.    Defendant was and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the Class Products, and the fact that they suffer from the defects that will inevitably cause them to fail.  As a result of the active concealment by Defendant, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## **CLASS ACTION ALLEGATIONS**

39.    This action is brought on behalf of Plaintiff, individually, and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and/or 23(b)(3), on behalf of a Nationwide Class of consumers. Specifically, the Nationwide Class consists of:

> All individuals and entities that own or have owned flexible braided stainless steel water heater supply lines ("Class Products or "Supply Lines") manufactured by Watts Water Technologies, Inc., or have owned homes or other structures physically located in the United States, in which Class Products are or were installed (the "Nationwide Class").

40.    In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiff seeks to represent the following state subclass:

> All individuals and entities residing in New Jersey that own or have owned Class Products, or have owned homes or other structures physically located in New Jersey, in which Class Products are or were installed (the "New Jersey Class") (the Nationwide and New Jersey Classes are hereinafter referred to collectively as the "Class").

41.     The rights of each member of the Class were violated in a similar fashion based upon Watts' uniform actions.

42.     This action has been brought and may be properly maintained as a class action for the following reasons:

a.  <u>Numerosity</u>:  Members of the Class are so numerous that their individual joinder is impracticable the proposed Class appears to include at least hundreds of thousands of members. Watts sold Class Products to at least hundreds of thousands of consumers throughout the United States. The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible. The precise number of Class members is unknown to Plaintiff.

b.  <u>Existence and Predominance of Commons Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

   i.   whether Class Products suffer from design defects;

   ii.  whether Class Products suffer from manufacturing defects;

   iii. whether Defendant knew Class Products were defective;

   iv.  whether Defendant intentionally concealed or failed to disclose to Plaintiff and the Class the inherent nature of the defect in Class Products;

   v.   whether Defendant had a duty to Plaintiff and the Class to disclose the inherent defect in Class Products, and whether Defendant breached that duty;

15

vi.  whether a reasonable consumer would consider the defective nature of Class Products to be material in deciding to Class Products;

vii.  whether Watts breached implied warranties;

viii.  whether Watts breached the implied covenant of good faith and fair dealing;

ix.  whether the defect(s) present in Class Products caused Plaintiff and the Class damages;

x.  the appropriate nature of class-wide equitable relief; and

xi.  the appropriate relief to award to Plaintiff and members of the Class.

43.  These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class.

a.  <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class since Plaintiff and Class members purchased or installed Class Products that were designed, manufactured, and warranted by Watts, and which suffer from significant design and/or manufacturing defects that render this product inherently defective and unsuitable for its intended purpose. Furthermore, Plaintiff and all Class members sustained money damages arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent class members.

b.  <u>Adequacy</u>: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class that he seeks to represent; and he has retained counsel competent and highly experienced in complex class

action litigation; and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

c.  <u>Superiority</u>: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation. It would be virtually impossible for members of the Class individually to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

d.  <u>Ascertainability</u>: Class members are readily identifiable; Class Products can be identified by unique markings on the supply line itself together with the labeling affixed to each connector.

e.  Plaintiff also intends to seek certification under Rule 23(b)(2), which requires proof that Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole. The defects plaguing Class Products, and Watts' failure to

disclose or remedy them, or to refund customers accordingly, is uniform and predicated on standard policies and practices.

f.   In the absence of a class action, Watts would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

**CAUSES OF ACTION**

**COUNT I – BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class or, in the Alternative, the New Jersey Class)**

44.   Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

45.   Watts is a "seller" within the meaning of Mass. Gen. Laws 106 § 2-103(1)(d).

46.   The Supply Lines are "goods" within the meaning of Mass. Gen. Laws 106 § 2-105(1).

47.   Watts marketed and sold its Supply Lines with the intent that the Supply Lines would be purchased by Plaintiff and the Class.

48.   The written warranty that has been transcribed herein and which was provided to Plaintiff and the Class when they purchased the Supply Lines constitutes an express warranty.

49.   In this warranty, Watts expressly states that its Supply Lines are free of manufacturing and design defects and suitable for use with most water heaters on the market today for one year from the date of purchase.  This express warranty became the primary basis of the bargain between Watts and Plaintiff and the Class when they purchased the Supply Lines for installation in their homes and structures.

50.   Specifically, Watts expressly warranted that the Supply lines purchased by Plaintiff and the Class would be defect-free for a period of one-year.  In fact, Defendant's Supply

Lines fall well-short of this express promise and have manifested uniform defects causing the Supply Lines to fail well in advance of this express promise.

51.     Defendant breached its express warranties to Plaintiff and the Class by developing, designing, manufacturing, marketing and selling Supply Lines that fell drastically short of being fit for their intended use as durable and long-term home appliance products.  As detailed herein, Watts' Supply Lines do not perform as expressly promised and have uniform defects.

52.     As alleged herein, Watts has denied and continues to deny its express obligations to Plaintiff and the Class under the language of its express warranty and failed to pay in full the warranty claims of Plaintiff and the Class.

53.     As a result of Watts' breach of its express warranties, Plaintiff and the Class have suffered actual damages, in that they have purchased and installed in their homes and other structures water heater Supply Lines that are defective and not at all suitable for their intended purpose.  These defects have caused and will continue to cause Plaintiff and the Class to expend substantial resources repairing and/or replacing their Supply Lines and to address any collateral damages to their underlying homes and structures proximately caused by Watts' defective Supply Lines.

54.     Due to Watts' longstanding knowledge of the design and/or manufacturing defects plaguing Class Products, as well as subrogation claims brought against Watts in connection with Class Products, Watts has not been prejudiced by any claimed delay by Plaintiff in reporting this breach.

## COUNT II – BREACH OF IMPLIED WARRANTIES OF
## MERCHANTIBILITY AND FITNESS FOR PARTICULAR PURPOSE
### (On Behalf of the Nationwide Class or, in the Alternative, the New Jersey Class)

55.     Plaintiff incorporates by reference each of the allegations contained in foregoing paragraphs of this Complaint.

56.     Watts is a "merchant" within the meaning of Mass. Gen. Laws 106 § 2-104(1).

57.     The Supply Lines are "goods" within the meaning of Mass. Gen. Laws 106 § 2-105(1).

58.     At all times material hereto, Watts manufactured and sold water heater Supply Lines to Plaintiff and the Class, and in so doing, impliedly warranted to them that the products were of merchantable quality and fit for their intended purpose as hot-water water heater supply lines.

59.     Watts' Supply Lines were unfit for their ordinary and intended use as hot-water water heater supply lines, and they were not of merchantable quality in that they were vulnerable by virtue of their defective design (and not due to any secondary cause) to fail and malfunction in the manner detailed herein.  As such, the Supply Lines were not merchantable at the time of purchase, in that they were not free from defects and not fit for their intended purpose, as warranted.

60.     As a result, Watts breached its implied warranties to Plaintiff and the Class by manufacturing and selling Supply Lines with fundamental inherent defects. Additionally, Watts knowingly allowed these warranties to be made to Plaintiff and the Class with the intent of inducing them to purchase its Supply Lines even after being put on notice by Plaintiff and other Class members of the defects inherent in those Supply Lines.

61.     As a result of Watts' breach of its implied warranties, Plaintiff and the Class have suffered actual damages, in that they have purchased and installed in their homes and other structures water heater Supply Lines that are defective and not at all suitable for their intended purpose.  These defects have caused and will continue to cause Plaintiff and the Class to expend substantial resources repairing and/or replacing their Supply Lines and to address any collateral damages to their underlying homes and structures proximately caused by Watts' defective Supply Lines.

62.     Due to Watts' longstanding knowledge of the design and/or manufacturing defects plaguing Class Products, as well as subrogation claims brought against Watts in connection with Class Products, Watts has not been prejudiced by any claimed delay by Plaintiff in reporting this breach.

## COUNT III - COMMON LAW FRAUD
### (On Behalf of the Nationwide Class or, in the Alternative, the New Jersey Class)

63.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

64.     Watts made material omissions to Plaintiff and the Class.  For example, Watts did not fully and truthfully disclose to Plaintiff and the Class material facts concerning the inherently defective nature of Class Products.  As a result, Plaintiff and the other Class members were fraudulently induced to purchase Class Products with the said design and/or manufacturing defects and all of the resultant problems.

65.     Watts made these omissions with knowledge of their falsity, and with the intent that Plaintiff and the Class rely on them.

66.     Plaintiff and the Class reasonably relied on these omissions, and suffered damages as a result.

## COUNT IV -- BREACH OF THE DUTY
## OF GOOD FAITH AND FAIR DEALING
### (On Behalf of the Nationwide Class or, in the Alternative, the New Jersey Class)

67.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

68.     Every contract contains an implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

69.     Watts breached the covenant of good faith and fair dealing by, *inter alia*, failing to disclose to Plaintiff and the Class that Class Products are inherently defective and unsuitable for their intended purpose.

70.     Watts acted in bad faith and/or with a malicious motive to deny Plaintiff and the Class some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT V – UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class or, in the Alternative, the New Jersey Class)

71.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

72.     Because of its wrongful acts and omissions, Watts charged a higher price for Supply Lines than their true value and obtained monies which rightfully belong to Plaintiff and the Class.

73.     Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and other Class members. It would be inequitable and unjust for Watts to retain these wrongfully obtained funds.

74.     Therefore, in the alternative to the warranty and contract claims stated above, Plaintiff seeks an order requiring Watts to make restitution and disgorgement to him and other members of the Class.

### COUNT VI –VIOLATIONS OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAWS
#### (On Behalf of the Nationwide Class or, in the Alternative, the New Jersey Class)

75.     Plaintiff incorporates by reference each of the allegations contained in foregoing paragraphs of this Complaint.

76.     Plaintiff brings this claim on behalf of himself and the New Jersey Class under the New Jersey Consumer Fraud Act, N.J. STAT. §§ 56:8-1, *et seq.* ("NJCFA"), as well as under the substantially similar Consumer Fraud and Deceptive Trade Practices Acts of the states in which members of the  Nationwide Class reside.

77.     The NJCFA prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

78.     In the course of Watts' business, it willfully failed to disclose and actively concealed the Supply Line defect as described above.  Accordingly, Watts has engaged in unfair and deceptive trade practices, including representing that the Supply Lines:   have characteristics, uses, benefits, and qualities which they do not have; representing that the Supply Lines are of a particular standard and quality when they are not and otherwise engaging in conduct likely to deceive.

79.     Watts' actions, as set forth above, occurred in the conduct of trade or commerce.

80.     Plaintiff and members of the  Class were injured as a result of Watts' conduct, in that Plaintiff and other Class members overpaid for Defendant's defective Supply Lines, did not receive the benefit of their bargain and experienced damages to their homes and structures as a direct proximate result of Defendant's conduct.

81.     A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class.  Had Watts disclosed the Supply Line's inherent defects to Plaintiff and the Class, they would not have purchased them or would have paid less for the Supply Lines had they decided to purchase them.

82.     Pursuant to N.J. STAT. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint.

83.     As set forth below, Plaintiff seeks to recover for Watts' unfair and deceptive acts of consumer fraud under the substantially similar Consumer Fraud and Deceptive Trade Practices Acts of the states in which members of the Nationwide Class reside.

84.     Plaintiff and other members of the Class have been damaged as a proximate result of Watts' violations of New Jersey's (and other States') Unfair Trade Practices and Consumer Protection Laws.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays, on behalf of himself and members of the Class, that this Court:

A.      determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue order certifying the Class;

B.      award all actual, general, special, incidental, statutory, punitive and consequential damages to which Plaintiff and Class members are entitled;

C.      award pre-judgment and post-judgment interest on such monetary relief;

D.      award reasonable attorneys' fees and costs; and grant such further and other relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff, on behalf of himself and the putative Class, demands a trial by jury on all issues so triable.

Dated: November 4, 2014

Respectfully submitted,

By:    /s/ Patrick J. Sheehan
Patrick J. Sheehan (BBO #639320)
WHATLEY KALLAS, LLP
60 State Street, 7th Floor
Boston, MA 02109
Phone:  (617) 573-5118
Facsimile:  (617) 371-2950
Email:  psheehan@whatleykallas.com

Bryan L. Clobes
CAFFERTY CLOBES MERIWETHER
    & SPRENGEL LLP
1101 Market Street
Philadelphia, PA 19107
Phone:  (215) 864-2800
Facsimile:  (215) 864-2810
Email: bclobes@caffertyclobes.com

Daniel O. Herrera
Christopher B. Sanchez
CAFFERTY CLOBES MERIWETHER
    & SPRENGEL LLP
30 North LaSalle Street
Suite 3200
Chicago, Illinois 60602
Telephone:  (312)782-4880
Facsimile:  (312)782-7785
Email:  dherrera@caffertyclobes.com
Email:  csanchez@caffertyclobes.com

*Attorneys for Plaintiff*